Antonio SNIPES, Sr., Plaintiff-Appellant,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,** Defendant-Appellee.

No. 04CA1650.

Colorado Court of Appeals, Div. IV.

March 9, 2006.

The Carey Law Firm, L. Dan Rector, Robert B. Carey, Leif Garrison, Colorado Springs, Colorado; Frankl & Tasker, P.C., Keith Frankl, Denver, Colorado, for Plaintiff-Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Christina L. Dixon, Englewood, Colorado, for Defendant-Appellee.

VOGT, J.

Plaintiff, Antonio Snipes, Sr., appeals the trial court's judgment in favor of defendant, American Family Mutual Insurance Company. We affirm.

In November 2000, plaintiff purchased an automobile policy from defendant that included basic personal injury protection (PIP) coverage with a $100,000 limit on benefits for medical and rehabilitation expenses and other limits on work loss benefits. In December 2001, plaintiff was injured in an automobile accident. When the amount of his claims reached the policy limits, plaintiff advised defendant that the policy did not meet statutory requirements under the former Auto Accident Reparations Act (No–Fault Act), Colo. Sess. Laws 1973, ch. 94, § 13–25–1, et seq., at 334 (formerly codified as amended at § 10–4–701, et seq.; repealed effective July 1, 2003, Colo. Sess. Laws 2002, ch. 189, § 10–4–726 at 649), because defendant had not offered plaintiff extended benefits as required under former § 10–4–710(2). Defendant agreed, reformed its policy, and provided plaintiff its "deluxe" PIP coverage, with a $200,000 aggregate limit.

When defendant refused to pay further benefits after the $200,000 limit was reached, plaintiff sued. He sought damages under various theories, as well as a declaratory judgment that, as relevant here, he was entitled to unlimited enhanced PIP benefits under defendant's policy.

On July 6, 2004, the trial court granted defendant's motion for summary judgment on plaintiff's claims regarding uninsured-underinsured motorist coverage, and plaintiff does not appeal that determination. In regard to PIP coverage, the trial court concluded that, "while Plaintiff is entitled to reformation of the insurance contract to include extended benefits pursuant to section 10–4–710(2)(a), said coverage is limited to an aggregate limit of $200,000.00." The court therefore denied plaintiff's motion for summary judgment and entered summary judgment for defendant on plaintiff's claims relating to the PIP benefits. The court stated in conclusion that, in light of its ruling, it would "vacate the presently scheduled jury trial unless cause is stated by the parties within 20 days of this order," that is, by July 26, 2004.

The trial court granted plaintiff's motion for an extension of time, to August 5, 2004, to seek reconsideration or relief pursuant to C.R.C.P. 59. Plaintiff filed nothing further, and on August 12, 2004, the trial court entered a minute order stating that the case was closed.

## I.

We note at the outset that several arguments made by plaintiff on appeal are not preserved for our review because they either were not made at all in the trial court or were made for the first time in a motion for reconsideration filed after the trial court lost jurisdiction over the case. *See Colby v. Progressive Casualty Insurance Co.*, 928 P.2d 1298 (Colo.1996)(issues not decided by trial court may not be addressed for first time on appeal); *Molitor v. Anderson*, 795 P.2d 266 (Colo.1990)(filing of notice of appeal divests trial court of jurisdiction to decide matters of substance directly affecting the judgment from which appeal is taken). Thus, because they were not timely raised in the trial court, we do not consider plaintiff's arguments that defendant's policy impermissibly imposes a "per person" rather than a "per person/per accident" aggregate limit, or that the policy otherwise contains defects precluding it from being a "complying policy" under the No–Fault Act.

We likewise do not consider plaintiff's contention that his bad faith claims were still viable after entry of the July 6, 2004, summary judgment. Plaintiff did not raise this contention in the trial court until that court lost jurisdiction to rule on it. *See Molitor v. Anderson, supra.* In any event, we note that plaintiff's argument is contrary to his position in a March 2004 motion to extend expert disclosure deadlines, in which he stated: "If the court rules upon [the summary judgment issue regarding enhanced PIP benefits] in favor of the Defendant, Plaintiff will have no claims to bring at trial."

## II.

Plaintiff argues that the trial court erred in determining on summary judgment that PIP coverage under defendant's reformed policy was subject to a $200,000 aggregate limit. We disagree.

**558**

### A.

■ Summary judgment is a drastic remedy and should be granted only if there is a clear showing that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A trial court's summary judgment is reviewed de novo on appeal. *Cyprus Amax Minerals Co. v. Lexington Insurance Co.,* 74 P.3d 294 (Colo.2003).

For the first time in his reply brief on appeal, plaintiff argues that there were issues of fact that precluded summary judgment. However, in the trial court, both parties asserted—and we agree—that there were no disputed issues of fact precluding summary judgment on the issue raised in defendant's motion.

### B.

Under § 10–4–710(2)(a) of the No–Fault Act, insurers were required to offer, in addition to the minimum statutorily required PIP coverage, optional supplemental coverage in exchange for a higher premium. However, under former § 10–4–710(2)(b), an insurer could include, in a complying policy, a $200,000 limit on the total aggregate benefits payable under the enhanced coverage.

When an insurer failed to offer the statutorily mandated optional coverage, such coverage was deemed incorporated into the policy by operation of law, and the policy was to be reformed to so reflect. *See Brennan v. Farmers Alliance Mutual Insurance Co.,* 961 P.2d 550 (Colo.App.1998); *Thompson v. Budget Rent–A–Car Systems, Inc.,* 940 P.2d 987 (Colo.App.1996).

Whether the enhanced benefits available under the reformed policy would be capped at $200,000, as permitted by § 10–4–710(2)(b), depended on whether the policy itself so provided. *Compare Brennan, supra* (trial court properly reformed policy to include extended PIP coverage mandated under § 10–4–710(2)(a); however, coverage was capped at $200,000 where policy placed that limit on all types of PIP benefits), *with Thompson, supra* (amount available under reformed rental agreement was not capped at $200,000 where car rental agency, a self-insurer, did not include $200,000 cap in rental agreement).

### C.

Under *Brennan* and *Thompson,* plaintiff was thus entitled to reformation of his policy to include enhanced benefits pursuant to § 10–4–710(2)(a). Defendant in fact reformed its policy to include such benefits. Plaintiff contends, however, that coverage under the reformed policy should not be subject to a $200,000 aggregate limit because the original policy he purchased did not unambiguously limit PIP coverage to $200,000. We are not persuaded.

■ An insurance policy, like any contract, is construed to give effect to the intent of the parties. An insurance policy must be enforced as written unless the policy is ambiguous, in which event it is construed in favor of providing coverage to the insured. *Cary v. United of Omaha Life Insurance Co.,* 108 P.3d 288 (Colo.2005).

■ Mere disagreement between the parties about the meaning of a provision does not create ambiguity. Further, because an insurer cannot be held liable beyond the scope of risks clearly covered in the policy, courts may not force an ambiguity in order to resolve it against the insurer. Nor are courts at liberty to raise doubts where there are none or to make a new contract between the insured and the insurer. *Kane v. Royal Insurance Co.,* 768 P.2d 678 (Colo.1989); *City of Arvada v. Colorado Intergovernmental Risk Sharing Agency,* 988 P.2d 184 (Colo. App.1999), *aff'd,* 19 P.3d 10 (Colo.2001).

The PIP endorsement in plaintiff's policy states, at the top, that coverages are "subject to all policy and endorsement terms and deductibles that apply, including the total aggregate limit." The following schedule of the various PIP coverages states in bold letters at the top of the columns showing deluxe PIP coverages: "AGGREGATE LIMIT—$200,000 per person." The endorsement's "general provisions" section reiterates that the "total aggregate amount payable for medical expenses, rehabilitation expenses, work loss, essential services expenses, and death compensation, shall not exceed the

amount shown in the schedule of this endorsement."

Notwithstanding this language, plaintiff argues that the policy does not include an aggregate limit on the basic PIP coverage he selected. In support of his argument, he points out that the words "AGGREGATE LIMIT—$200,000 per person" appear over the columns showing the deluxe PIP coverages but not over the column describing basic PIP coverage.

■ The same argument, in regard to the same policy endorsement, was made by the plaintiff in *Breaux v. American Family Mutual Insurance Co.*, 387 F.Supp.2d 1154 (D.Colo.2005). There, as here, the plaintiff argued that her policy should be reformed to reflect enhanced PIP coverage in compliance with former § 10–4–710(2)(a), but that it should not include a $200,000 aggregate limit because there was no such limit on basic PIP coverage in the policy she purchased. In rejecting the plaintiff's argument, the court stated:

> Contrary to Plaintiff's arguments, the PIP endorsement to Plaintiff's policy at the time of issuance clearly establishes a $200,000 aggregate limit....
>
> Plaintiff essentially argues ... that because the graphic representation of the intended aggregate limit does not extend over the leftmost, mandatory minimum PIP coverage column, ... no such aggregate limit was in place.... Plaintiff's argument is specious at best. Simple addition will show that the maximum benefit available under the mandatory minimum PIP coverage is $130,900, patently within the $200,000 aggregate limit. This mathematical truth, coupled with the bolded print in capital letters at the top of the schedule reading "DELUXE PIP AGGREGATE LIMIT—$200,000 per person" lends heavy support to [a] conclusion [that] an aggregate limit was indeed in place.

*Breaux, supra*, 387 F.Supp.2d at 1165 (footnote and record citations omitted). Accordingly, because the $200,000 aggregate limit authorized by statute was unambiguously set forth in the original PIP endorsement, the defendant in *Breaux* was entitled to summary judgment as to the applicability of that limit. *See also Clark v. State Farm Mutual Automobile Insurance Co.*, 433 F.3d 703, 711 (10th Cir.2005)(concluding that $200,000 aggregate limit applied to benefits available under reformed policy where policy capped benefits payable under enhanced coverages but not under plaintiff's basic coverage, and noting: "On its policy schedule, State Farm need not specifically include a $200,000 aggregate limit under the [basic] coverage symbol when such basic coverage cannot possibly provide PIP benefits exceeding that amount.").

We reach the same conclusion as that reached in *Breaux* and *Clark*. As in those cases, plaintiff's original basic PIP coverage could not have provided benefits exceeding $200,000, which was clearly intended to be the maximum PIP coverage available under the policy. Construing the policy to afford coverage beyond that limit would amount to forcing an ambiguity where none exists in order to make a new contract between the insured and the insurer. This we may not do. *See Kane v. Royal Insurance Co., supra.*

Because plaintiff was not entitled to coverage in excess of the $200,000 aggregate limit, the trial court properly entered summary judgment for defendant on plaintiff's claims that were premised on the existence of such unlimited coverage.

The judgment is affirmed.

Judge CASEBOLT and Judge FURMAN concur.